M’Kean C. J.
having fully stated the case, observed, that thereon several questions had been made, which may be stated as follows.
1. Had the Court of Appeals jurisdiction to investigate facts after a trial and general verdict by a jmy, and to give a contrary decision, without the intervention of another jury?
2. Had the Court of Common Pleas of Lancaster county jurisdiction in the action by Olmstead and the others against the executors of the judge? Or should not the decree of the Court of Appeals have been carried into execution by that court, or the state Court of Admiral'ty, without the aid or interference of any common law court?
3. Can an action be maintained on this bond, the condition whereof is virtually to disobey the Court of Appeals and the laws of the land, if that court had a right to decide contrary to the general verdict of a jury ? And whether the plaintiffs, without having defended or given notice to the present defendant of the suit in the Court of Common Pleas, can support an action on this bond ?
I conceive it proper for me to premise, that I took notice at the time a similar action was first brought to trial in this court, that when the business was before the Court of Appeals of the * United States, in December 1778, I had the honour to be president of that court, but declined sit- L ting, on account of my connection with this state as chief justice, and otherwise; and that the same reason still subsisted. That the next thing to giving a righteous judgment, was to endeavour to give general satisfaction, which circumstance might not probably be attained by our decision of the present controversy, both court and jury being in some degree interested, as they were all citizens of Pennsylvania. Por these reasons, I expressed a wish, that some mode might be adopted for trying the cause in the Supreme Court of the United States. This proposition was then assented to; but it seems our expectations have been disappointed, and we are obliged at last to decide the controversy.
To determine the first question, we must take into consideration the 4th and 6th sections of the act of congress of November 25th, 1775, and the act of assembly, passed September 9th 1778. The congress on the 15th January 1780, resolved (inter alia,) that “the trials in the Court of Appeals “be according to the usage of nations, and not by jury.”
This has been the practice in most nations; but the law of nations, or of nature and reason, is in arbitrary states inforced by the royal power, and in others by the municipal law of the country; which latter may, I conceive, facilitate or improve the execution of the decisions by any means they shall think best, provided this great universal law remains unaltered. *456 Now, why may not a fact respecting the capture from an enemy by citizens of the same state, and in which question no foreign nation or person is concerned, be determined by s jury, as well as in other case? This mode of ascertaining a fact, done on the high seas, to wit, who were the captors of a prize, when the contending parties are all citizens, or subjects of the same country, seems to be as reasonable, as in disputes about property acquired on land. I confess I do not see how the law of nations is counteracted or infringed by it.
In England, if piracy was committed by a subject, it was held a species of treason, being contrary to his allegiance by the antient common law; if by an alien, to be felony only. Formerly it was cognizable, by the admiralty courts, which proceed by the rules of the civil law; but the statute of 28 Hen. 8, c. 15, established a'new jurisdiction for this purpose, which proceeds according to the course of the common law. Here is a precedent of an act of parliament changing the common mode of trial in Europe, and introducing the trial by jury, which remains in force and practice to this day. If this can be done, where life is the stake, a fortiori it may be done in matters of meum & * tuum. It then appearing to me, that the congress and legislature of Pennsylvania had power and authority to make the alteration in the mode of trial of facts litigated between citizens, it remains to be inquired, whether the verdict in the present case was capable of re-examination by the court of appeals, without another jury.
The genius and spirit of the common law of England, which is law in Pennsylvania, will not suffer a sentence or judgment of the lowest court, founded on a general verdict, to be controlled or reversed by the highest jurisdiction, unless for error in matter of law, apparent on the face of the record. 3 Bl. Com. 330, 379. 1 Wils. 55. And this is enforced by the act of assembly of September 9th 1778, in the very case under consideration, which was passed in compliance with the act of congress of November 25th 1775, and allows an appeal in all cases unless from the verdict of the jury, having a reference to the subject matter, and meaning that though facts should not be re-examined or appealed from, but an ap- ■ peal might be made notwithstanding, with respect to anv error in matter of law. The advantages of viva voce evidence over the written in the investigation of truth, will hardly be controverted at this day in the United' States, and the Court of Appeals had not the opportunity of seeing the witnesses on the trial, or of so well knowing the credi. due to them respectively as the jury.
For these reasons, and others, which I shall omit for the sake of brevity, I am sorry to be obliged to say, that in my judgment, the decree of the committee of appeals was contrary to the provisions of the act of congress, and of the gen *457 eral assembly, extrajudicial, erroneous and void. I am strengthened in this opinion, by the true construction of the resolve of the congress of January 15th 1780, viz. that the trials in the new Court of Appeals should be according to the usage of nations, and not by jury, which implies that the Court of Appeals prior to this, had, or ought to have proceeded by jury trials. Ad questionem facti non respondent judices, ad questionem juris non respondent juratoros. 1 Inst. I55- b.
As my opinion, on the first question, is in favor of the defendant, it will appear unnecessary to say any thing to the other points; but as they have been strongly insisted upon, I shall briefly notice one of them.
It rather seems to me, that the appellants had no other way .of obtaining the execution of the decree in their favour, but by the aid of the Court of Appeals, or of the Admiralty, and that no court of common law had any jurisdiction in the case. Dougl. *572. 3 Term Rep. 344. 4 Term Rep. 382, r*458 400. Dallas 221. 1 Wils. 211.
I also think, that no action will lie against a judge, for what he does as such. Cro. El. 80, 397. 1 Mod. 184, 185. 2 Mod. 218. 12 Mod. 388, 391. 1 Ed. Raym. 465. 2 Ed. Raym. 767.—Salk. 397.
Shippen, J.
Two principal questions arise on the case.
1. Whether the Court of Appeals of congress were competent to decide the question of “prize or n.o prize,” and the consequent question of who were the captors to whom the prize should be adjudged, contrary to the verdict of the jury in the state court of admiralty?
2. Was ''he action of Olmstead and others against the executors of the judge of the admiralty, for the money lodged in his court, in consequence of his own decree, cognizable in the Court of Common Pleas of Lancaster county?
As to the first question, I own, I am not convinced, that the sovereign power of the nation, vested by the joint and common consent of the people and states of the union with the exclusive rights of war and peace, and with the consequent necessary powers of judging, in the last resort, of the legality of captures on the ocean, can either i-n reason or sound law, be precluded from deciding on appeal, both of facts and law arising in cases of prize, merely because they had recommended to the different legislatures, to pass laws to establish courts of admiralty for the trial of prize causes, in which the facts were in the first instance to be tried by jury, according to the course of the common law.
1st. Because in the nature of things, and according to the course and practice of all civil law courts, all decisions in the courts, in the last resort, upon appeals, are made upon a view and full consideration of both fact and law.
*458 2<Ily. Because otherwise, appeals from the inferior courts would in most cases be vain and nugatory.
3dly. Because otherwise, no steady and uniform rules of decision could be established, and foreign nations could never know or confide in the grounds of our decisions; and it does not appear to me material, that in the present instance, all the parties were American citizens.
And lastly, because in the present case, congress has explicitly reserved the power of the final decision upon appeal, in all cases.
As to the second question, whether an action is sustainable in the Court of Common Pleas, in behalf of Olmstead and *4591 ot^iers * against the executors of the judge of the admi- -* ralty, for the money he distributed according to his own decree, I acknowledge that I cannot discover any principle or authority in law, upon which such an action can be supported.
It is not now to be made a question, whether the courts of admiralty have not an exclusive jurisdiction over all questions of prize or no prize, and also who are the captors of prizes, and how distribution shall be made, together with the power of enforcing their own decrees. The cases of Rindo v. Rodney, (Doug. 591.) Le Caux v. Eden, (lb. 572.) and Camden v. Home, (4 Term Rep. 382,) fully settle this point.
The jurisdiction of the admiralty seems likewise to be exclusive in many cases, where the question o-f prize appears to be at rest, as where the admiralty has decided that a ship taken is no prize, as in the case of a neutral vessel. In that case, it is not competent for a common law court to sustain a suit for the illegal capture, but a new libel is exhibited in the admiralty, to compel the captors to account to the captured. 4 Term Rep. 385. So in the case of Le Caux v. Eden, an action for false imprisonment would not lie at common law, where the imprisonment was merely in consequence of taking a ship as prize, although the ship had been acquitted. I know of but one case where the common law courts have sustained suits for money, paid out of the Court of Admiralty in consequence of a taking as prize, and that is, where the admiralty has fully liquidated all demands relating to the proceeds of a prize, and the money remains in the hands of the agents of the captors; in such cases, actions at law have been supported against the agents. But in those cases, it must be ascertained that these are the agents of the real captors, for if any thing is left for the admiralty to settle, as if other persons not represented by the agents, claim any part of the proceeds, there the courts of law will not interfere. And this was the case of Rord Camden v. Home. 4 Term Rep. 382.
What is the case before us? A judge of an inferior court of admiralty condemns a prize, declares who are the captors, *459 and orders a distribution accordingly. On appeal to the superior court of admiralty, that court reverses his judgment, and directs a different distribution. The judge below refuses to obey the sentence, and persists in distributing the proceeds of the prize agreeably to his own decree. A suit is brought here to compel the judge to perform the decree of the superior court. Was the case or question of prize at rest? Or was there not something more to be done by the superior court, to enforce this sentence? Can ours be a proper court to decide between the sentences of *two contending courts of admiralty, or to enforce the sentence of either?
It is in vain to say, the times were such, that the superior court could not, or would not, proceed to extremities with the judge of the inferior court. We are not authorized to aid a defective or unwilling jurisdiction, by assuming an extraordinary power unknown to the law. Can a judge, in the execution of his own judgment, although contrary to that of a superior court, be considered as in the situation of an agent, receiving the money of his constituents? Or if by any strained construction, he could be called the agent of those in whose favour he decrees, can he be sued as the agent of those against whom he decrees?
In whatever light I view this question, I am satisfied that the Court of Common Pleas were incompetent to carry into effect the decree of reversal of the superior court of appeals, and that an action for money had and received, against the executors of the judge, who distributed the money according to his own decree, could not be sustained in a court of law.
Yeates, J.
On the statement of facts in this case, three points have occurred:
1. Whether the Court of Appeals of the United States had jurisdiction in the case of the sloop Active ?
2. Whether the Court of Common Pleas at Lancaster had jurisdiction in the action brought by Gideon Olmstead and others, against the now plaintiffs?
3. Whether the plaintiffs are damnified, so as to warrant the present proceedings under all the circumstances? I will consider the different points invertedly.
On the third point, I am satisfied by the authorities cited by the plaintiff’s counsel, that there is sufficient proof of a damnification to warrant the suit in a common case. The non-payment of money at the day, is a forfeiture of a counter bond. 1 Vent. 261. Cro. El. 672. Putting the obligee in danger of being arrested, is a damnification. 3 Bulst. 233. 5 Co. 24, a. Cro. Jac. 340.
It was admitted indeed on the last argument, that the proceedings at Lancaster should be considered as evidence of a damnification, but that the defendant should be let into a full defence in this action. No notice having been given to this defendant, of the institution of the suit against the now plain *460 tiffs, he is not estopped from saying, that they were not bound in the former action to pay the money. 3 Term Rep. 377, is express to this purpose.
On the second point, it has been insisted by the defendant’s * counsel, that the courts of admiralty having exclu-5 -I sive jurisdiction in cases of prize and their consequences, the Common Pleas at Eancaster could have no cognizance of the action commenced by Gideon Olmstead and others.
In the famous case of Ee Caux v. Eden, Willes, J. says, “where the injury is the necessary and natural consequence “of the capture, the Court of Admiralty has the sole and exclusive jurisdiction.” Doug. 579. Ashurst, J. observes, “Where the admiralty has jurisdiction of the original matter, “it ought also to have jurisdiction of every thing, necessarily incidental.” Ib. 580. Buller, J. in a very elaborate argument, infers “from all the adjudged cases, that the ad- “ miralty has a jurisdiction on the question of'prize or not “ prize, and its consequences, and that the common law courts “have none.” Ib. 587, 590. And in Smart v. Wolff, the words of Buller are1 ‘ Every case that I know on the subject, “ is a clear authority to shew, that questions of prize and their “consequences, are solely and exclusively of the admiralty “jurisdiction.” "3 Term. Rep. 344.
In Lord Camden et al. v. Home, it is adjudged, that the prize courts and courts of commissioners of appeals, have the sole and exclusive jurisdiction of the question of prize and no prize, and who are the captors. 4 Term. Rep. 383.
In Doane’s administrators v. Penhallow et al. Dall. 321, Mr. President Shippen expresses himself thus: In this cause “the validity of the sentence of the Court of Appeals is disputed; if we say it is valid, we in effect say, the brigantine “is no prize, if otherwise, we say she was a prize. We have “clearly no authority to say either the one or the other.” And again, “this is an action to carry into execution the “sentence of the Court of Appeals, which we have no authority to do, that being the proper judicature, to carry into ‘ ‘ effect its own sentences. ’ ’
These authorities militate strongly against the jurisdiction of the Court of Common Pleas of Lancaster county. The cause of action there, was “the immediate and necessary “ consequence-of the vessel’s being taken as a prize.” Dall. 221. It was in short, a demand instituted by the plaintiffs as sole captors of the sloop Active.
But it has been contended by the plaintiff’s counsel, that here all parties affirm the same thing, to wit, that the sloop was a prize, and that question cannot now possibly arise, which is said to distinguish it from the several cases cited; and for this purpose, Henderson v. Clarkson, determined in this court April term 1793, is quoted, where the court held, *461 that an agent for * seamen might recover at common law their prize money, due under the decree of the Court of Admiralty of Pennsylvania.
I find from my notes, that the circumstances attending that action were as follow. The plaintiff was appointed agent for forty-three seamen on board the privateer brig Holker, to receive their prize money. The defendant was marshal of the Court of Admiralty of Pennsylvania, where two of the prizes were libelled, condemned and sold. The plaintiff, on the 27th December 1781, gave a bond to the commonwealth in 2500I. penalty, conditioned to account faithfully with the seamen, and to pay over the shares unclaimed within one year to the use of the corporation of contributors to the Pennsylvania hospital. The judge of'the admiralty on that day also issued a warrant to the defendant, to deliver over the goods and money due to the owners and seamen, or their agents, on the different prizes; to which he made return, that the goods and money were ready to be delivered over. That suit was brought to recover the prize money due to the plaintiff’s constituents. The marshal had paid a considerable part and rendered his account, but some of the items therein were disputed. The court, on full argument, resolved, that the agent might, as a common head or centre for the captors and hospital, under the right acquired by the acts of assembly of 8th March and 22d September 1780, institute a suit in his own name, as the captors themselves-might have done; and as the question respecting prize or no prize could not come into controversy, he might recover the money due to them by the admiralty decree, they having a vested interest therein, under the acts of congress and the legislature. The marshal had returned to the judge, that he had the goods and money ready to be delivered to the captors or their agent, and this was held to amount to a written promise to pay the same to the plaintiff Henderson, as agent of the seamen.
The two cases are not analogous; they possess distinct prominent features. In the former cause there was no question who were the captors, or how the booty was to be divided; there were no discordant decrees of different marine courts, no dispute respecting the constitutional powers of the judicature which pronounced the final decree; here they all fully exist, and a common law court at Lancaster was called on to carry into execution the decree of the Court of Appeals against the executors of the state judge, and in derogation of the decree he had given, sanctioned by the verdict of a jury.
On the first point, it is not absolutely necessary to give an opinion, whether if the resolve of congress had been absolute and imperative, instead of being barely recommendatory, as to the * establishment of courts of admiralty in the r*4«3 different states, and the law of any one state had been *- *463 repugnant thereto, such resolution would be supreme, and controul the law of the individual state; or to attempt to define the former powers of the congress, by fixing how far they reached anterior to the accession of Maryland to the confederation, on the ist March 1781. I am, however, compelled to say, that the powers of the congress must necessarily be supposed to have been co-extensive with the great objects which America then had in view, and competent to protect and advance the united interests of the whole. It is sufficient, in my idea, for the decision of the case before us, to observe, that the present suit resting on the judgment in Lancaster county as its basis, if the then plaintiffs were not legally entitled to recover against the executors of Mr. Ross, the action now before the court is not sustainable. 3 Term Rep. 377.
I have only to add, that it would have also afforded me much pleasure if this argument had been conducted before the judges of.the Supreme Court of the United States. We formerly indulged ourselves with hopes of it, when the jury were discharged in an action between the now plaintiffs and Thomas Learning in January term last, where the same points came in question. We may be considered in some remote degree as' parties to the present suit, and the decision of the federal judges would probably have given more general satisfaction. But our opinion has been insisted on, and we are bound to give it. On the best consideration, therefore, that I have been able to give the subject, I find myself constrained to give my voice, that judgment be entered for the defendant.
Smith J.
I had.the honour of being one of the committee of the house of assembly, who met a committee of congress in conference on the business of the sloop Active. Being fully sensible of the difficulty of eradicating early prejudices, I intended to have declined giving any opinion on the points argued before the court; but I will, however, now say, that I perfectly agree with the judge who last delivered his sentiments. Were it necessary to give my sentiments on the first point, I should incline to the opinion of the chief justice respecting it. On one point, I have no difficulty in saying that no action would lie against a judge, for what he does in that character. In addition to the cases already cited on that head, see 12 Co. 24, 25. 7 Mod. 81. Carth. 494, 497. Hardr. 71. Holt 395. 14 Vin. 579.
Judgment for the defendant, by all the court.